UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------x

PHILIP G. BARRY,

              Appellant,

     v

THOMAS PERKINS
and SALLY PERKINS,

            Appellees.
----------------------------x

Case No.: 1:17-cv-03078 (AMD)

---

# APPELLANT BRIEF

---

Philip Barry #77573-053
F.C.I.  P.O. Box 2000
Joint Base MDL, NJ 08640

## TABLE OF CONTENTS

                                                          Page:

Table of Authorities . . . . . . . . . . . . . . . .   ii

Statement of Jurisdiction  . . . . . . . . . . . . .    2

Statement of Issues Presented  . . . . . . . . . . .    3

Applicable Standard of Review  . . . . . . . . . . .    4

Statement of the Case  . . . . . . . . . . . . . . .    4

Summary of Argument  . . . . . . . . . . . . . . . .    6

Argument

      Question One . . . . . . . . . . . . . . . . . . .    9

      Question Two . . . . . . . . . . . . . . . . . . .   13

      Question Three . . . . . . . . . . . . . . . . . .   19

      Question Four  . . . . . . . . . . . . . . . . . .   21

Conclusion . . . . . . . . . . . . . . . . . . . . .   27

Affirmation  . . . . . . . . . . . . . . . . . . . .   27

Statement of Compliance  . . . . . . . . . . . . . .   27


Also submitted:

Certificate of Mailing
Certificate of Service

## TABLE OF AUTHORITIES

Cases:                                                      page:

American Mariner Industries, in re . . . . . . . . . . . . .   4
Smith, in re . . . . . . . . . . . . . . . . . . . . . . .    11
Perry, in re . . . . . . . . . . . . . . . . . . . . . . .    12
Cruseturner, in re . . . . . . . . . . . . . . . . . . . .    12
Littke, in re . . . . . . . . . . . . . . . . . . . . . . .   12
Dienberg, in re . . . . . . . . . . . . . . . . . . . . . .   12
White, in re . . . . . . . . . . . . . . . . . . . . . . .    21
Hildreth, in re . . . . . . . . . . . . . . . . . . . . . .   21
McBoyle v. United States . . . . . . . . . . . . . . . . .    23

Statutes:

11 U.S.C. §362 . . . . 2, 3, 4, 5, 8, 10-11, 12, 20, 21, 22, 25
11 U.S.C. §301 . . . . . . . . . . . . . . . . . . . . . .    10
11 U.S.C. §302 . . . . . . . . . . . . . . . . . . . . . .    10
11 U.S.C. §303 . . . . . . . . . . . . . . . . . . . . . .    10
28 U.S.C. §158(1) . . . . . . . . . . . . . . . . . . . . .    2

Rules:

Federal Rules of Bankruptcy Procedure 7001 . . . . . . . . .   2

U.S. Constitution:

Fifth Amendment  . . . . . . . . . . . . . . . . . . . . .23-24

U.S. Congress:

Title 2 Chapter 20 re: subchapter IV . . . . . . . . . . . .  11

Reference:

Black's Law Dictionary 10th Edition (2014) . . . . . . . .    23

( ii )

## STATEMENT OF JURISDICTION

The Bankruptcy Court for the E.D.N.Y. had subject matter jurisdiction to hear the subject adversary proceeding between the Plaintiff-Debtor and the Creditor-Defendants in the under-lying individual Chapter 11>7 Bankruptcy Case No. 08-47352 pursuant to 11 U.S.C. §362 and Federal Rules of Bankruptcy Procedure (FRBP) 7001. Bankruptcy Court jurisdiction was invoked by the filing of a complaint on July 27, 2016 alleging, inter alia, willful violations of the Automatic Stay Provisions of §362 by the Defendants, the Bankruptcy Court's issuance of a summons that date and the filing of a certificate of service of the Summons on August 2, 2016. The Bankruptcy Court assigned case number 1-16-01135-nhl to the proceeding.

This Court has jurisdiction to hear the instant appeal which is from a final order or judgment of the Bankruptcy Court granting in part a motion to dismiss in a core proceeding pursuant to 28 U.S.C. §158(1), and the filing of a notice of appeal, a certificate of service and a certificate of mailing with the Bankruptcy Court by depositing same in the Federal Inmate Legal Mail System on May 9, 2017 along with a true copy under separate cover addressed to Jared Rich Esq., Attorney for the Defendants/Appellees, 44 Court Street, Suite 917, Brooklyn, NY 11201, with sufficient First Class Postage affixed to each.

## STATEMENT OF ISSUES PRESENTED

1. Whether the Bankruptcy Court (the "BK Court") erred in finding that a foreclosure action against the Debtor to recover secured property which had been removed from the bankruptcy estate was not a violation of the Automatic Stay (11 U.S.C. §362(a)) when no relief from the Stay had been granted, and the foreclosure action was served process upon the Debtor, and substantially prosecuted during the pendency of the bankruptcy case.

2. Whether the BK Court erred in finding that a secured creditor was granted leave to file for a deficiency judgment in State Court for the unsecured portion of a debt, by means of a statement of mootness from the BK Court on a motion for relief from the Automatic Stay to pursue a foreclosure action to recover secured property, i.e. more generally, can a statement of mootness of a motion impart a right or privilege of which the movant is not already possessed?

3. Whether the BK Court erred in its reasoning that it was not a violation of the Automatic Stay to serve process, substantially litigate, and obtain a summary judgment against the Debtor during the pendency of the bankruptcy case in an action which sought a deficiency judgment for unsecured debt, because the final motion therefor was made after the final decree date.

( 3 )

4.  Whether the BK Court was incorrect in its determination that for purpose of finding the date of the termination of the Automatic Stay, the meaning of "...or the discharge being granted or denied." (11 U.S.C. §362(c)(2) ) also means the date of a voluntary waiver of discharge.


## APPLICABLE STANDARD OF REVIEW

Each of the four questions presented on appeal are subject to de novo review. Findings of law are subjected to abuse of discretion scrutiny, while findings of fact are reviewed by the clearly erroneous standard.  (See In re: American Mariner Indus. (1984 CA9) 734 F. 2d 426, 12 BCD 227, 10 CBC 2d 910, CCH Bankr. L. Rptr. ¶69886 and 11 U.S.C. CH. 3 IV §365 I(B) 14 & 15.


## STATEMENT OF THE CASE

The subject bankruptcy adversary proceeding alleged multiple violations of the Bankruptcy Code's (the "Code") Automatic Stay protections of the debtor from actions of creditors. The Complaint (AP DE 1)[1] alleged myriad violations with respect to both real property and personalty. The causes of action with respect to the personalty are still pending in the BK Court, hence this appeal deals solely with the real property and a related deficiency judgment for unsecured debt.

1. Docket Entries in the subject adversary proceeding are denoted as "AP DE..."  while those of the underlying Bankruptcy Case are indicated as "BK DE..."

( 4 )

The Complaint specifically alleged that during the pendency of the Bankruptcy Case, and without relief from the Automatic Stay (11 U.S.C. §362) being obtained, the Defendants, as creditors with knowledge of the bankruptcy proceedings, filed a foreclosure action naming the Debtor as Defendant, caused the Debtor to be personally served with a summons and complaint, substantially litigated the action, and moved for and obtained summary judgment against the Debtor— all prior to the Bankruptcy Case final decree date. The Complaint further alleged that included in the relief sought in that foreclosure complaint was a deficiency judgment for unsecured debt. Such deficiency judgment was ultimately obtained against the Debtor in the amount of approximately $1.2 million. All the actions by the Defendants cited in the Complaint were alleged to have been violations of the Automatic Stay.

It was additionally alleged that the Defendants caused or permitted the destruction and/or disposal of the Debtor's business and financial records prior to the commencement of the foreclosure action. Included in those records were documents necessary to defend against the foreclosure action and to be used as evidence in the subject Adversary Proceeding. It was therefore further alleged that the Defendants had engaged in purposeful spoliation of evidence germane to the pending Adversary Proceeding, meeting the requisite egregiousness standard to merit punitive damages.

The Defendants filed an answer to the Complaint on September 9, 2016 (AP DE 7), then moved to dismiss the action on March 10, 2017 citing various grounds.  (AP DE 14)

( 5 )

After a March 28, 2017 hearing on the Motion, the BK Court granted the Motion in part, issuing a final order (AP DE 17) on April 14, 2017 dismissing the causes of action respecting the real property, inclusive of the foreclosure action and the deficiency judgment. The remainder of the Adversary Proceeding is still pending.

SUMMARY OF ARGUMENT

With respect to issue "1" on appeal, it is argued that the BK Court erred in its finding that it is not a violation of 11 U.S.C. §362(a) to commence and substantially prosecute a foreclosure action against a debtor during the pendency of a bankruptcy case in the absence of relief from the Automatic Stay when the secured property has been abandoned from the bankruptcy estate. The argument asserts that this is clearly contrary to the letter of the Code, the substantial body of caselaw on this question, and the express intent of Congress when drafting the Automatic Stay provisions. It is further argued that the rationale for the BK Court's decision in this regard is reflective of a misapprehension of the Code whereby bankruptcy was incorrectly viewed primarily and predominantly as protection of property from collection actions rather than relief for the debtor from collection efforts.

For issue "2" it is argued that the BK Court erroneously found that a statement of mootness from the Court with respect to a motion for relief from the Automatic Stay to pursue a foreclosure action against secured property removed from the bankruptcy estate

( 6 )

also authorized the Defendants to pursue legal action against the Debtor to collect unsecured debt. Here it is argued that the BK Court conflated the concept of the universe of relief sought in a motion when granting relief from the Stay, with the more limited effect of declaring the motion as moot. It is argued that a statement of mootness, i.e. the absence of adjudication cannot grant a right of which the movant is not already possessed.

It is further argued that the BK Court erred in its rationale with its novel implicit determination that the Automatic Stay's proscriptions against actions by creditors may vary from state to state to accomodate creditors in dealing with the burdens of state law and respective state court procedural rules.


Issue "3" takes exception to the BK Court's finding that it was not a violation of the Automatic Stay to serve process, substantially litigate, and obtain a summary judgment against the Debtor during the pendency of the Bankruptcy Case in an action seeking a deficiency judgment for unsecured debt because the final motion therefor was made in the action after the final decree date. It is here argued that this finding is contrary to the clear language of the Code, caselaw, and is prejudicial to other unsecured creditors. It is further demonstrated that such a finding, if upheld, would invite substantial widespread evasion of the Automatic Stay by creditors going forward.


( 7 )

With respect to issue "4" it is argued that the BK Court improperly expanded the meaning of the phrase, "...or the discharge being granted or denied." (11 U.S.C. §362(c)(2)). This Section pertains to when the Automatic Stay is terminated for the individual debtor. It is argued that the words, "or discharge is voluntarily waived" were incorrectly imputed to the statute, and that the BK Court thereby in effect re-wrote the statute. This undertaking is demonstrated to implicate multiple problems such as lack of fair notice of the law, separation of powers, prospective pragmatic issues for the courts, as well as it being a marked inconsistency within the Court itself.

<u>ARGUMENT</u>

QUESTION ONE

The BK Court ruled that it was not a violation of the Auto-
matic Stay (the "Stay") for the Defendants to have served a
complaint, litigated, and obtained a summary judgment against
the Debtor in a foreclosure action during the pendency of the
Bankruptcy Case without obtaining relief from the Stay[1] because
the secured property had been abandoned from the bankruptcy estate.
This question was preserved for abuse of discretion appellate re-
view in oral arguments during a hearing on the granted and appealed-
from Motion to Dismiss. Relevant transcript excerpts reflective of
the Plaintiff-Appellant's argument and the Court's rationale in
this regard are as follows:

> THE COURT: ...Why was there a stay violation in connection
> with commencing proceeding--and I don't know where
> it was when it started.--but proceeding to a fore-
> closure judgment and sale of this real estate and
> a sale?
>
> MR. BARRY: Okay. Because according to my reading of the Code
> [Debtor-    and the plain meaning of the words, the Code pro-
> Plaintiff] tects individuals against suits, against service
> during the pendency of the case and as long as the
> stay is in effect and the abandonment of the prop-
> erty would appear to just allow an in rem proceed-
> ing against the property itself but does not take
> away the benefit of the stay or the protection of
> the stay for the individual. So in this case during
> the pendency of the case I was named personally in
> a lawsuit, served personally...
>
> THE COURT: No, No Hold on Hold on Hold on.
>
> MR. BARRY: Okay
>
> THE COURT: Let's be careful and let's split a couple of hairs.
>
>                       .   .   .
>
> So the universe of relief that was requested in the
> motion was not necessary because **there was no stay
> in effect because the property was no longer prop-
> erty of the estate.**

( 9 )

. . .

```
THE COURT:   So if in order to properly have a foreclosure in
[con't]      state court under New York various parties have
             to be named in order to foreclose their rights
             against the property. There was no stay violation
             in naming and serving you with respect to the
             foreclosure. That's the way this judge reads the
             Bankruptcy Code, the effect of the abandonment,
             the effect of the property not being property of
             the estate, it would be ludicrous. In other words,
             I everyday sign motions for relief from the stay.
```

. . .

```
             You were served, there was no violation of the stay
             and you being served with a foreclosure, you're a
             necessary party, they couldn't commence a foreclo-
             sure without doing that. That's part and parcel,
             but when I lift a stay I never put that in. The
             stay is lifted, nobody ever asks for it.
```

. . .

```
             So what I'm going to do today is I am going to
             dismiss with prejudices those counts that relate
             to the real property or the deficiency and we'll
             adjourn the issue with respect to personalty.
```

             (Tr. March 28, 2017 AP DE 20, p. 22-24, 37, 44)

                                          (emphases added)

The Code is however abundantly clear as to exactly what the

Automatic Stay does, and who and what it protects:

> "...a petition filed under section 301, 302, or 303 of this
> title [11 U.S.C. 301, 302, 303] operates as a stay, appli-
> cable to all entities, of --
>
> (1) the commencement or continuation, including the issuance
> or employment of process, of a judicial, administrative, or
> other action or proceeding against the debtor that arose
> before the commencement of the case under this title, or to
> recover a claim against the debtor that arose before the
> commencement of the case under this title;

. . .

1. A motion for relief from the stay was not granted and is the
   subject of Question Two infra.

( 10 )

(5) any act to create, perfect, or enforce against
**property of the debtor** any lien to the extent that
such lien secures a claim that arose before the
commencement of the case under this title;

(6) any act to collect, assess, or recover a claim
**against the debtor** that arose before the commence-
ment of the case under this title.

(11 U.S.C. 362(a))
(emphases added)

The plain and unequivocal meaning of the cited portion
of the Bankruptcy Code is that the Automatic Stay protects
debtor individuals and entities themselves, and that the protec-
tion of their property is ancillary to that primary protection.

Although Congressional intent is often difficult to discern
and the cause of much debate, fortunately here we have an express
statement from Congress which confirms their intent. The pertin-
ent House Judiciary Report is emphatic on this question:

"The automatic stay is one of the fundamental debtor
protections provided by the bankruptcy laws. It gives
the debtor a breathing spell from his creditors. It
stops all collection efforts, all harassment, and all
**foreclosure actions.**

(Title 2 The Congress Chapter 20 re: subchapter
IV Administrative Powers, 362 Automatic Stay)

(emphasis added)

Caselaw is also emphatic on this question:

"Scope of automatic stay provisions is broad and applies
to formal and informal proceedings against debtor; any
action taken in violation of automatic stay is void."

(in re: Smith 1988 WP Mich)

( 11 )

The seriousness with which the law views a violation of the Stay is considerable:

> "k(1) ...an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances may recover punitive damages."
>
> (11 U.S.C. §362(k)(1))

It appears moreover that the BK Court was also incorrect with respect to whether the Stay continues to protect estate property after abandonment by the trustee:

> "Automatic stay applies to property in debtor's possession at time of filing and remains in effect as long as property remains in debtor's estate; upon abandonment by trustee, property leaves estate and goes back to debtor, in which case it is protected from creditor action, absent circumstances justifying modification of the stay, until discharge is either granted or denied in accordance with 11 USCS §362(c)(2)(C).
>
> (In re: Perry (1983, DC Md) 29 BR 787, 9 CBC2d 931, affd (1984, CA4 Md) 729 F. 2d 982, 11 BCD 961)

Although the above-cited findings may seem to conflict with the wording of §362(c)(1), a careful reading thereof as in the following decisively clears up any confusion:

> "Returning to the question as to the scope of protection afforded the debtor by Section 362, it is initially apparent that the automatic stay protects both property of the estate and property of the debtor. Specifically, Section 362(a)(3) stays 'any act to obtain possession of property of the estate or of **property from the estate,**' ...Clearly then, the stay applies to property in possession at the time of filing, and remains in effect should the trustee thereafter abandon such property... It does not terminate the stay against property of the debtor if the property leaves the estate and goes to the debtor."
>
> (In re: Cruseturner, 8 B.R. 581, 589-92 BK UT 1981; Littke BK IN 105 B.R. 905 1989; Dienberg 348 B.R. 482)

( 12 )

To summarize, property of the estate is no longer under the branch of the Stay which protects estate property once it has left the estate, but as it is property "from" the estate, it is still protected as such when abandoned to the Debtor.

It is therefore readily apparent that the BK Court erred with respect to both its finding that abandonment of property from the estate somehow concurrently modifies the Stay to permit the naming of the Debtor in a foreclosure action, and also its conclusion that the abandoned property itself is no longer under protection of the stay.

## QUESTION TWO

Whether the BK Court erred in finding that a secured creditor was granted leave to file for a deficiency judgment in state court for the unsecured portion of a debt, by means of a statement of mootness from the BK Court on a motion for relief from the Automatic Stay to pursue a foreclosure action to recover secured property, i.e. more generally, can a statement of mootness of a motion impart a right or privilege of which the movant is not already possessed?

This issue presents a fairly novel question because the BK Court promulgated a perhaps unprecedented expansive appraisal of what a statement of mootness from a court can accomplish. To give context to the following hearing excerpts, the subject creditors moved the BK Court in the underlying bankruptcy case (08-47352 EDNY) for relief from the Stay to pursue a foreclosure action against property owned by the Debtor. The Court asked the trustee to respond to the Motion. He advised the Court (incorrectly as shown above in Question One supra.) that because the property had

( 13 )

been abandoned from the estate, no relief was necessary. The Court then cancelled a scheduled hearing on the Motion and issued a check-off style form which marked-off the Motion as moot, and quoted the trustee's response in a remarks section at the bottom.

The Adversary Proceeding Complaint asserted that the Defendants violated the Stay by, in addition to filing a foreclosure action, also suing for unsecured debt for which they obtained a deficiency judgment of approximately $1.2 million.

The Court's rationale in finding no violation was as follows:

THE COURT: ...the Judge ruled that that universe of relief
            was not necessary by virtue of the abandonment
            by the trustee back in April of 2010.

(Tr. March 28, 2017 p. 8)

The Motion for relief from the Stay had not however asked for leave to sue for unsecured debt— only to foreclose on the secured property.

The Plaintiff-Appellant then stated his objections to the Court's interpretation of the Statement of Mootness:

MR. BARRY: ...the universe of relief that was requested did
           not include the ability to essentially piggyback
           a civil suit for what the secured creditor was
           not secured for, which ultimately became a de-
           ficiency judgment. Therefore,... seeking a de-
           ficiency judgment was combined with the fore-
           closure which was served and largely litigated
           during the pendency of the case.

(Id. p. 25)

Here is how the Court found that the Statement of Mootness did grant that leave and consequently, there was no violation.

MR. BARRY: So far as the discharge goes there's also the
           aspect of the Code which involves the protection
           of the debtor from lawsuits during the pendency
           of the case regardless of whether discharge is
           ultimately granted or not.

( 14 )

THE COURT: That's correct. Okay. That's correct but let's
assume that under state law you'[ve] got to ask
for it in the foreclosure. Okay? ...
the relief requested in the affidavit included
relief of the mortgage note which is personal
as against you and the affidavit is a supporting
paper here.

MR. BARRY: If I understand you correctly, because the motion
for relief from the stay which was declared moot
mentions the mortgage note, therefore anything
that they are entitled to do under the mortgage
note it would be deemed to be [moot] because they
can proceed with a foreclosure.
The only reaction I would have to that is that
it would seem to prejudice unsecured creditors
who do not have the opportunity to seek damages
for that which they are not secured and, you know
I think case[law is] clear that a mortgagee is
secured only to the extent of their security in-
terest-- the value of their security interest.

THE COURT: Here's the point. But the prejudice would be too
great to the mortgagee.

. . .

the law requires them to ask for the deficiency
a[t] the beginning.

(Id. p. 31-32, 33-34, 42)

There are multiple problems with the Court's reasoning here.
Initially the Court said, "let's assume that under state law you'[ve]
got  to ask for it in the foreclosure." (Id.) By the end of the
colloquy, that assumption was enhanced to a certainty: "the law
requires them to ask..." (Id.)

There may exist a state law or rule requiring it, but I have
not been able to find it. If the note states that the lender is
entitled to compensation for a shortfall, that entitlement is not
forfeited by virtue of having filed for foreclosure without initially
asking for an uncertain contingency in an unknown amount. It is of
course conceded that asking in the complaint is probably the easiest

( 15 )

and most convenient way to do it. It may be less expedient if those unsecured funds must be sought later or in a separate action, but the Automatic Stay protections are fraught with inconveniences and financial hazards for creditors. It is a given that bankruptcy almost always entails negative consequences for the parties involved. That unfortunate and unavoidable reality does not however furnish ample justification for a court to condone violations of the Stay in the name of the equities or for hypothetical prejudice to the violator had the law been complied with.

The BK Court stated that, "the prejudice would be too great to the mortgagee." (Id.) Holding the mortgagee to the letter of the Code would certainly be less advantageous to the mortgagee, but a finding of prejudice must at least implicitly include a benchmark of comparison, i.e. whose situation is the mortgagee prejudiced relative to? The only reasonable conclusion derivable from this proper form of prejudice determination would be that there would be no prejudice because, with respect to the portion of what they are owed for which they are not secured, strict compliance with the Stay— as the Code demands, would place them at parity with all other unsecured creditors in the case. Or from the opposite perspective, the fact that an individual or entity is fortunate enough to be partially secured does not entitle them to jump in front of the wholly unsecured creditors to collect their uncol-lateralized balance. In short, the Code and the bankruptcy courts have never had V.I.P check-in for certain creditors within a class of the similarly situated, and never should. Adherence to this principle is especially critical in a case such as here, wherein many unsecured creditors suffered extreme financial hardship.

( 16 )

The Court's overall reasoning on this question closely resembles that which could constitute the equitable grounds in support of a petition for relief from the Stay— not a legal argument that the Stay was factually and legally inapplicable.

At several junctures, the Court also seemed to conflate what the granting of a motion for relief from the Stay does, with what a statement of mootness can do. The Court supported its conclusions by analogizing with what it does and the scope of what it permits when granting a motion for relief from the Stay. (Id. passim) The distinction between the two can be best illustrated by means of a simple question raised by this issue: How can a statement of mootness, i.e. the equivalent of no action taken by the court, convey a right or privilege of which the movant is not already possessed?  The only valid answer is that it cannot. Even if here, the Court did not fully ascribe to the statement of mootness all the potency of an order to grant relief from the Stay, at the very least it endowed a mootness finding with the attributes of a declarative judgment.

Prospective problems with the Court's findings are myriad. When a court grants relief from the Stay, even if improvidently, there is no question that the court had the discretionary authority to do so. A bankruptcy court additionally often utilizes the granting of such relief to place limitations thereon, e.g. that a creditor may sue a debtor but must return to, and be subject to the authority of the court with respect to actual collection. In contrast, a statement of mootness typically carries no express limitations and the entire matter can go forward under a cloud of uncertainty, as the case here.

( 17 )

This is an issue with serious potential ramifications beyond just the impact on bankruptcy case adjudication and administration. A violation of the Stay involving litigation has jurisdictional import for other courts. The Code and caselaw are unwavering that legal actions taken in violation of the Stay are not merely avoidable, but void. In the case of foreclosure, if the Stay was in fact violated thereby, then the state court did not have jurisdiction to grant judgment of foreclosure, and more importantly, any deed of foreclosure therefrom is void and can imperil third-party buyers and insurers relying thereon. The distinction between avoidable and void is particularly critical in the foreclosure scenario in that those third parties would not yet necessarily have fair notice from the bankruptcy court that the deed is invalid. Nor is there a statutory time limit to potential harm from breaks in the valid chain of title. Cases such as this regularly surface decades later, and in rare cases, (e.g. Native American treaty conveyances) more than a century after the fact. In short, abundance of caution is indicated.

Finally, there is the longer term yet still weighty problem of moral hazard. Although the following may seem like an alarmist type scenario, it is not so if it is kept in mind that creditors and their attorneys are creative and relentless in their efforts to preclude and circumvent potential losses flowing from bankruptcy filings by their borrowers. If the dual findings of the Court here are upheld, i.e. that the Stay terminates entirely upon abandonment of secured property and that a mortgagee needs no relief from the Stay to sue for unsecured debt, then the credit market (in this district at least) will adjust to that new opportunity. Many creditors who normally lend unsecured funds will require token collateral-

( 18 )

ization either real or chattel, knowing that this will place them at the head of the line in front of unsecured creditors who must seek and may not receive relief from the Stay. The result will be further inequity in the system and undermining of the Code. For both the legal, and these practical concerns, the Court's findings in these respects should not be permitted to stand.

## QUESTION THREE

Whether the Bankruptcy Court erred in its reasoning that it was not a violation of the Automatic Stay to serve process, substantially litigate, and obtain a summary judgment against the Debtor during the pendency of the bankruptcy case in an action which sought a deficiency judgment for unsecured debt, because the final motion therefor was made after the final decree date.

In deciding that the litigation seeking to collect unsecured debt was not a violation of the Stay, the BK Court found dispositive significance in the date of the final motion for a deficiency judgment. Although the case was served process, substantially litigated, and summary judgment obtained against the Debtor during the pendency of the bankruptcy, the Court found that since the date of the motion for deficiency judgment was after the final decree, there was therefore no Stay violation.

The relevant hearing transcript excerpts:

> THE COURT: ...now we have to look at when it is that the deficiency was sought...the motion for the deficiency was not made until February 18, 2016.
>
> . . .
>
> The next date is the date the case is closed, alright, which we've determined now was November 8, 2013. The motion for the deficiency was years later... The Stay no longer was in effect either

( 19 )

THE COURT: on October 13, 2010 or November 8, 2013,
   [con't] both before the motion for deficiency
   judgment was made. What say you?

MR. BARRY: ...the deficiency judgment was originally...
   relief which was asked for in the original
   complaint which was served in 2012. So I be-
   lieve the Code doesn't allow someone to just
   file against a debtor and then really hold off
   on a motion for judgment until after the case
   is closed. I believe that impacts the jurisdic-
   tion of the court because at the time that the
   case was served and at the time that the de-
   ficiency judgment was asked for as relief that
   I would argue that the stay was still in effect.

               . . .

THE COURT: ...but I will tell you that there was no effort
   to collect the deficiency until after.

         (Tr. March 28, 2017 p. 25-26, 27-28, 30)

There is however simply nothing in the Code or caselaw which supports the above-articulated notion of divisability with respect to actions to collect debt in the presence of the Stay. The Code starts its enumeration of prohibited acts with the words: "the commencement or continuation, including the issuance or employment of process..."  11 U.S.C. §362(a)

Also, seemingly forgotten in the Court's reasoning is the issue of jurisdiction. If process is served in violation of the Stay, then that process and hence the court's jurisdiction is impaired. A court's jurisdiction over an individual normally commences with service of papers on that individual. Although such defects can be cured by proper service early on, it is almost never the case that a jurisdictional problem can be retroactively remedied once the case is well along, as here, wherein the bankruptcy final decree came more than a year, and many pleadings, along with a summary judgment later.

( 20 )

The Court's conclusion in this regard is nothing short of astonishing when one considers the fact that bankruptcy courts regularly find facially innocuous acts such as collection phone calls to be Stay violations. See e.g. in re White (2009 BC MD Fla) wherein the debtor was awarded damages of $100.00 per phone call times fifty calls for a total of $5,000.00. Also see in re Hildreth (2006 BC MD Ala 357 BR 650) where punitive damages for phone calls were awarded under 11 U.S.C. §362(k)(1).

The absence of reversal of the Court's findings here would become an invitation for creditors to game the system, thereby effectively circumventing the Stay by initiating prohibited actions during the period of the Stay, but holding off on motions for final relief until the Stay is terminated.

## QUESTION FOUR

Whether the BK Court was incorrect in its determination that for purpose of finding the date of termination of the Automatic Stay, the meaning of "...or the discharge being granted or denied." (11 U.S.C. §362(c)(2)) also means the date of a voluntary waiver of discharge.

This question pertains to the critical issue of when the Automatic Stay terminates. As can be seen below, the law says one thing, the Court acknowledged that it says that, but then said it meant something different entirely:

> MR. RICH: So 11 U.S.C. 362(c)(2) provides that the automatic stay continues until the earliest of either the time the case is closed or the time the discharge is granted...

( 21 )

THE COURT: Until the discharge is granted or denied. You left out an important word... So we have a waiver of discharge which is the equivalent of the denial of a discharge...
So your waiver of discharge which I would submit is equivalent to the denial or granting of the discharge was October 13, 2010...

MR. BARRY: Going back to the waiver of discharge, in the notice of that settlement that was a case brought -- an adversary proceeding brought by the U.S. Trustee and that was settled by stipulation. In the notice of that settlement that was docketed in the case there was no denial of discharge. I interpret that merely as I waive the right of discharge at the end of the case and the wording of the Code states that the stay continues unless there is a denial of discharge.

THE COURT: Well, now, I waive that as having been determined okay. It says, granted or denied, and so I don't agree with you...

. . .

MR. BARRY: ...the discharge was not denied but that I merely waived it-- the rights of a discharge at the end of the case and the language of what was entered into the docket did not state there was denial and the language of the Code specifically states denial, not waiver.

. . .

THE COURT: Alright. I'm reading the language of the stipulation, "The debtor hereby waives the entry of a discharge in this case and represents that (a) he has waived his discharge voluntarily, he has made a conscious and informed decision to waive his discharge and he is aware of the consequences of waiving his discharge" and they dismissed the adversary proceeding with prejudice. Again, I believe that means that that discharge was waived when it happened in 2010.

(Tr. Id. p. 12, 27-28, 36, 43)

The problems here are again manifold. On its face, it would appear that the Court in effect simply and improperly added the words, "or the discharge is voluntarily waived" to the end of §362(c)(2). It is well established that courts are not authorized to amend laws.

( 22 )

On this very issue, Justice Holmes probably said it best:

> "the statute should not be extended...simply because
> it may seem to us that a similar policy applies, or
> upon speculation that if the legislature had thought
> of it, very likely broader words would have been used."

> (McBoyle v. United States 283 U.S. 25,27 (1931))

Aside from the basic separation of powers proscriptions, what the Court did here creates a due process problem of lack of fair notice of the law. This specific waiver issue does not come up often enough for it to be fairly said that there is some sort of common knowledge notice. If the law doesn't mean what it says, where does one go to find out its true meaning? How would one be on alert to even know that there is a hidden alternative meaning to look for? One certainly can't find this other meaning or meanings in an ordinary dictionary. Even if a pro se party happened to get hold of a Black's Law Dictionary, he still would not discover the Court's quasi-orwellian construct. Here are the relevant portions of the respective definitions:

> "waive vb. 1. To abandon, renounce, or surrender (a claim,
> privilege, right, etc.); to give up(a right or claim)
> voluntarily.
>
> denial n. ...2. A refusal or rejection; esp., a court's
> refusal to grant a request presented in a motion or
> petition

> (Black's Law Dictionary 10th Ed. (2014))

The words, "or the discharge is voluntarily waived," for all their prior accessibility, just may as well be written in invisible ink. The lack of due process fair notice problem is particularly acute here because the subject being a foreclosure action,

( 23 )

places the issue squarely within the Constitution's Fifth
Amendment prohibition of deprivation of property without due
process of law.

The Court read into the record some of the wording of the
stipulation which contained the waiver of discharge. Those words
said that it was done voluntarily, and was a conscious and in-
formed decision with awareness of the consequences. (Tr. Id. p. 43)
How can one be aware and informed of the consequences if the law
as applied by the Court doesn't mean what it says? There is no
fair notice when a court springs a hidden or new consequence after
the fact. One high standard that courts are held to is that when
a person is before it to waive a right, the court must go out of
its way to elicit express confirmation that the party knows the
consequences of the waiver. That did not happen here. I can state
with full certainty that had I known that waiving discharge ended
the protection of the Stay, I would not have entered into that
stipulation at that time.

This stance by the Court again brings up practical problems
for courts going forward. If agreeing to settle an adversary pro-
ceeding by stipulating to a waiver of discharge opens the flood-
gates of litigation, then debtors will not agree to settle such
proceedings except in the final days of the bankruptcy case.
This will result in more adversary proceedings unnecessarily going
to trial with many others needlessly remaining on the open docket
for extended periods of time.

Even assuming arguendo that the Court did not improperly do
an effective re-write of the statute, the argument that a waiver

( 24 )

is the equivalent of a denial also must fail. It is indisputable
that the intent of Congess in adding the discharge grant or denial
alternative Stay termination point was to establish the de facto
substantial ending of a bankruptcy case. This was prudent because
cases sometimes stay open for years after all issues are adjudi-
cated and settled but for the existence of an asset or matter
which still needs to be administered over an extended period.
There would be no need for the Stay to remain in effect indefin-
itely. §362(c)(2) therefore gives the court the option of granting
or denying the discharge and ending the Stay at what would normally
be the end of the case, yet allow the case to remain open for a
limited administrative purpose. This provision was never intended
to permit unfettered litigation for extended periods while the
bankruptcy case is still fully active. This is also one of the
reasons that discharge is customarily granted or denied at the end
of the case rather than sooner. Here however, we have a case which
was still very active and remained so for more than three years
subsequent to when the Court now says the Stay terminated because
a waiver is equivalent to a denial. The very clear intent and
plain purpose of the statute, coupled with such an expanse of
intervening time between the waiver and case closing, both here
and even in more typical cases, is fatal to the equivalence argument.

Finally, the Court was expressly inconsistent in relation to
this issue— even within the same proceeding. The Court's position
is that by docketing notice of a waiver, but taking no further
action, the BK Court in the underlying case effectively "denied"
discharge. The Court however took the precisely opposite position

( 25 )

as to when the Court had issued a notice of mootness, but similarly took no action. Note that the Court viewed the distinction between no action and a denial as important enough to emphatically correct counsel for the Defendants several times:

> THE COURT: Okay. And your motion-- the motion for relief from the stay was--
> MR. RICH:  It was denied as moot.
> THE COURT: No, No, No, I'm just-- I'm looking for it.
>
>                    . . .
>
> Okay. It wasn't denied as moot, it was marked moot. That's different. It really wasn't denied... It's not that it was denied just to be clear. So it wasn't denied...
> MR. RICH:  I misspoke; yes
>
>                         (Tr. Id. p. 7-8)

So on one hand we have the Court saying that when it comes to mootness, be sure not to say "denial," but when the Court similarly takes no action beyond docketing a notice of stipulation with a waiver, now that's a denial. Remarkably, this is all within a period of minutes within the same proceeding.

The subject of lack of advance fair notice of the law was discussed supra. Here, it can be readily seen that not only was there no fair notice, but notice to the opposite effect could have been reasonably inferred from earlier in the very same hearing. That is exceedingly confounding. It certainly merits appellate remediation.

( 26 )

CONCLUSION

For the legal, factual, equitable, and pragmatic reasons
as set forth herein with respect to each question presented,
this Court should vacate the Order which dismissed the adversary
case in part, and remand for proceedings consistent with this
Court's findings and instruction.

                              Respectfully submitted,

Dated: October 17, 2018

                              Philip Barry
                              Appellant pro se

AFFIRMATION

I, the undersigned Philip Barry hereby affirm under penalty
of perjury that all factual assertions in the foregoing brief
are true to the best of my knowledge and belief.

Dated: October 17, 2018       _____
                              Philip Barry

STATEMENT OF COMPLIANCE

I, Philip Barry, Appellant, hereby certify that the fore-
going brief complies with applicable F.R.A.P. and F.R.B.P in
that it is printed in a Courier 10 equivalent typeface and
contains less than 14,000 words.

Dated: October 17, 2018       _____
                              Philip Barry

( 27 )